# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| CEDRIC BURTON, Register No. 173471, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-4029-CV-C-NKL |
| | ) | |
| SGT. WALTER FRIEZEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT, RECOMMENDATION AND ORDER

Plaintiff Cedric Burton, an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

Before the Court are the motions for summary judgment filed by defendants Friezen and Moore. Plaintiff has filed responses to the motions and defendants have filed their respective replies.

### Summary Judgment Standard

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly

probative, however, will not prevent entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact."  Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985).  In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts.  Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment.  Fed. R. Civ. P. 56(c).

## Statement of Facts - Excessive Force and Denial of Medical Care Claims against Defendant Friezen

During the relevant date of June 26, 2004, plaintiff was an inmate at Missouri State Penitentiary (MSP).  Defendant Friezen was a Corrections Officer II at MSP and defendant Moore was a Licenced Practical Nurse (LPN) employed by Correctional Medical Services (CMS) at MSP.

On June 26, 2004, plaintiff was observed in the visiting room of MSP, by video camera, visiting with a female, Judy Diamond.  The visit was monitored because information from a telephone conversation between plaintiff and Ms. Diamond revealed a plan to smuggle narcotics into the prison at their next visit.  While monitoring the video, defendant Friezen observed Ms. Diamond pass an item to plaintiff Burton and Burton place that item down the front of his shirt.  Based on this observation, defendant Friezen believed the item passed to be contraband, and plaintiff was escorted from the visiting room to the dress-out area where inmates are searched.  At least one other officer was present in the dress-out room with defendant Friezen.  Defendant Friezen told plaintiff he had seen Ms. Diamond pass contraband to plaintiff and then saw plaintiff place it down his shirt.  Friezen ordered plaintiff to give him the contraband.  When plaintiff did not comply, Friezen ordered plaintiff to remove his clothes to enable a strip search for contraband to be conducted.  Plaintiff removed all his clothes.  No contraband was located on plaintiff's person.

At this point, defendant Friezen states he ordered plaintiff, who was naked but still clutching his shirt, to give him the shirt, in which Friezen believed plaintiff was clutching the

2

contraband. Friezen states that in response, plaintiff yelled and cursed at him, became aggressive and refused to obey the order. Defendant Friezen states he believed plaintiff was planning to physically confront him, and felt threatened and feared for his and the assisting officer's safety. Defendant Friezen states plaintiff pushed him and began moving toward the toilet in what Friezen believed was an attempt to dispose of the contraband. Defendant Friezen states that, subsequently, he made contact with plaintiff and attempted to hold him down to the floor in an effort to prevent disposal of the contraband and to protect his safety. Defendant Friezen states plaintiff continued to fight and resist, and to yell obscenities at him. Defendant Friezen states he advised plaintiff to quit resisting or he would mace him. When plaintiff continued to resist, Friezen states he sprayed plaintiff with mace and placed a handcuff on his wrist to restrain him. Friezen states he believed plaintiff to be a threat to his and the assisting officer's safety if plaintiff was not restrained. After being sprayed with pepper spray, defendant Friezen states plaintiff continued to fight, resist and curse, and Friezen observed plaintiff bite through his shirt that he still held in his hand, and then swallow. Defendant Friezen states he believed plaintiff swallowed the contraband that was in his shirt. Defendant Friezen states he subsequently called for backup to help cuff plaintiff's second hand. With the assistance of other officers, Friezen states that both of plaintiff's hands were cuffed and plaintiff was immediately placed in a holding cell in the dress-out area. Defendant Friezen states at this point he had no further contact with plaintiff. Defendant Friezen states that at 6:30 p.m., plaintiff was first seen by medical staff while in the holding cell, and that medical staff advised that plaintiff was OK. Friezen states plaintiff was later moved to a dry cell with no access to water. Friezen states he did not punch, hit or choke plaintiff at any time.

       Plaintiff states defendant Friezen attacked him, hitting him three times, choking him and subsequently spraying his entire body with mace. Plaintiff states that as a result of the incident, he suffered minor cuts and bruises, and burning all over his body due to mace contamination. Plaintiff states that after the incident, defendant Friezen denied him proper medical care for his mace contamination.

*Excessive Use of Force*

       Prison officials may use force that is reasonable and necessary under the circumstances to achieve a legitimate penal objective. Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The

3

"unnecessary and wanton infliction of pain," however, violates the Eighth Amendment. Id. at 319 (citation omitted). Thus, when a prisoner alleges prison officials used excessive force, the appropriate test is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992). Prison officials act maliciously when they "undertak[e], without just cause or reason, a course of action intended to injure another"; they act sadistically when they "engag[e] in extreme or excessive cruelty." Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994). In determining whether prison officials acted maliciously and sadistically for the purpose of causing harm, the fact finder should consider the threat the officials reasonably perceived, the need for force, the relationship between the need for force and the amount of force used, and the injuries inflicted. Id. at 871.

Prison officials are not liable under the Eighth Amendment simply because it appears, in retrospect, that they used an unreasonable amount of force. Whitley, 475 U.S. at 319; Jasper v. Thalacker, 999 F.2d 353, 354 (8th Cir. 1993). When faced with a disturbance, prison officials must act quickly and decisively to restore order. Hudson, 503 U.S. at 6. Courts should not interfere with prison administration unless officials have acted in bad faith or without any legitimate purpose. Stenzel v. Ellis, 916 F.2d 423, 427 (8th Cir. 1990).

An excessive-force plaintiff must suffer "actual injury." Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995). Although serious injury is not required to show cruel and unusual punishment, Hudson v. McMillian, 503 U.S. 1 (1992), it is a factor that may be considered. Howard, 21 F.3d at 871. See also Dawkins v. Graham, 50 F.3d at 535 (an excessive-force plaintiff must show "actual injury," which is less than "significant injury").

In the instant case, the evidence does not support plaintiff's statements that defendant Friezen's use of force was excessive.

Although technically disputed by plaintiff's statements, the video evidence clearly establishes probable cause to believe contraband was passed to plaintiff. The videotape recording submitted to the court of the June 26, 2004 visitation between plaintiff and Ms. Diamond clearly shows Ms. Diamond handing to plaintiff an apparent item of contraband, which plaintiff put down the front of his shirt. No reasonable jury could find otherwise. Plaintiff was

4

strip searched because he was believed to be in possession of contraband. Plaintiff's statements that he was strip searched based upon racism are unsupported by any evidence.

Although plaintiff had removed all of his clothing during the strip search, he does not specifically dispute that during the strip search, he remained holding his shirt in his hand, in which Friezen believed there was contraband. Defendant Friezen provides undisputed evidence that he used force in response to plaintiff's refusal to turn over the contraband and plaintiff's aggressive demeanor toward him. In this regard, there is no dispute of material fact that plaintiff was not restrained when strip searched, or when the use-of-force incident between Friezen and plaintiff began. There is no dispute that (1) plaintiff was angry at Friezen and was yelling obscenities in response to allegations that he was in possession of contraband; (2) plaintiff was known as an aggressor within the prison; (3) during the use-of-force incident, plaintiff forcefully resisted being restrained; (4) plaintiff acknowledges that defendant Friezen would have probably felt his tactical position during the use-of-force incident was threatened because plaintiff was trying to get away; (5) during the altercation, plaintiff tried to push Friezen off of him and was forcefully struggling and twisting back and forth between his side and his back; and (6) plaintiff acknowledges that he was willing to do whatever it took to get away from Friezen, including hurting Friezen. See Doc. 31, Defendant Friezen's Motion for Summary Judgment, Exh. A, Deposition Testimony of Cedric Burton. Plaintiff's statement that his aggressive resistance to being restrained by Friezen was done defensively to protect himself is not supported by the evidence and does not present a dispute of material fact as to whether Friezen's use of force in restraining plaintiff was reasonable. The undisputed evidence indicates Friezen's actions were factually grounded on a good-faith belief that plaintiff was in possession of contraband, and thus, his actions in attempt to retrieve such contraband from plaintiff were reasonable.

An inmate in a maximum security prison can legitimately be required to submit to a strip search and to turn over all clothing he is wearing when, as here, there is reasonable suspicion he is attempting to smuggle contraband into the prison after a contact visit with someone from outside the prison walls. See, e.g., Smothers v. Gibson, 778 F.2d 470 (8th Cir. 1985); Hunter v. Auger, 672 F.2d 668 (8th Cir. 1982) (even visitors can be strip-searched under such conditions). In fact, Butler-Bey v. Frey, 811 F.2d 449 (8th Cir. 1987), holds that prisoners in a maximum security facility can be strip-searched as a routine matter after contact visits with outsiders.

5

Plaintiff has no right to resist such a search and inspection of his clothing, and an officer conducting such a search is authorized to use reasonable force to overcome such resistance.

From plaintiff's aggressive confrontational words and behavior and his aggressive physical refusal to be restrained, defendant Friezen reasonably perceived a threat of harm from plaintiff and thus, used force to diffuse the threat. There is no evidence, beyond plaintiff's bald assertions, that defendant Friezen's actions against plaintiff were done for the very purpose of causing harm to plaintiff, and thus, no evidence that plaintiff was reasonable in his aggressive resistance against defendant Friezen. Plaintiff was resisting a lawful search of his person for contraband. His resistance was not reasonable and defendant Friezen had the right to use reasonable force to overcome the resistance. See, e.g., Stenzel v. Ellis, 916 F.2d 423 (8th Cir. 1990). No reasonable jury could conclude otherwise, based on the facts set forth in this case. Further, there is no dispute of material fact that as a result of the use of force against plaintiff, plaintiff suffered only minor cuts and bruising and the after-effects of pepper spray. Plaintiff's injuries indicate the use of force was minimal, and do not indicate extreme cruelty or vicious or sadistic punishment.

Upon consideration of the undisputed facts, no reasonable jury could find that defendant Friezen used excessive force, in violation of the Eighth Amendment. The undisputed material evidence shows that Friezen's actions were done in a good-faith effort to restore and maintain prison discipline and security, and that Friezen's use of force caused only minor and short-term injury to plaintiff. In viewing the evidence in the light most favorable to plaintiff, the evidence reveals the use of force by Friezen was commensurate with the situation.

*Deliberate Indifference to Serious Medical Condition*

To succeed on his Eighth Amendment medical claims, plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. Id. The standard for "deliberate indifference" includes an objective and a subjective component. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and

6

refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)); see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d at 176). When an inmate alleges a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation is also measured by reference to the effect of the delay in treatment. Coleman v. Rahija, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)); see also Beyerbach v. Sears, 49 F.3d at 1326. An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Beyerbach v. Sears, 49 F.3d at 1326 (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)).

A mere difference of opinion between plaintiff and his treating medical personnel about what treatment is appropriate does not give rise to a colorable claim under section 1983. Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Courtney v. Adams, 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

It is undisputed in the instant case that plaintiff was seen by medical personnel shortly after the use-of-force incident. It is reasonable for prison officials to rely on medical assessments when an officer is not responsible for examining the inmate. Gordon et rel. Gordon v. Frank, 454 F.3d 858, 864 (8th Cir. 2006). There is no evidence that after being assessed by medical personnel, Friezen thereafter denied plaintiff any recommended medical care. In taking the evidence in the light most favorable to plaintiff, plaintiff has failed to show that defendant Friezen was deliberately indifferent to his medical needs.

7

### Statement of Facts - Denial of Medical Care Claims
### against Defendant LPN Johnetta Moore

After the use-of-force incident between plaintiff and defendant Friezen on June 26, 2004, plaintiff was placed in a holding cell. Plaintiff's medical records indicate that nondefendant Nurse Dorman was summoned to the holding area that same date at approximately 6:30 p.m. The medical records reflect that Nurse Dorman did a physical examination of plaintiff in which she noted her findings as "skin intact, V.S.S. within normal limits. I/M (inmate) able to stand and walk with steady gait, answers questions without difficulty." (Doc. 21, Defendant Moore's Motion for Summary Judgment, Exh. C-2, Medical Records of Cedric Burton.) Nurse Dorman further noted plaintiff's subjective complaints of eyes burning and trouble breathing. In response to such complaints, the medical records indicate a treatment plan consisting of flushing plaintiff's eyes and mucous membranes with water, but that a shower was not required. The records reflect that only when a large area of skin has been exposed to pepper spray is a shower required.

Plaintiff's medical records further reflect that at approximately 8:00 p.m. on the same date, plaintiff was assessed by another nondefendant, Nurse Phillips, in response to a sick call complaint by plaintiff which cited his eyes to be burning and trouble breathing. At this time, plaintiff had been moved to a dry cell by prison officials, in response to the belief that plaintiff had swallowed the contraband. Nurse Phillips noted the whites of plaintiff's eyes to be red, and he was hostile and angry, but that he appeared to be in no apparent distress. Nurse Phillips further noted plaintiff to be in a dry cell per order of the DOC (Department of Corrections) and that his eyes had been flushed while in OPC.

The medical records further reflect that at approximately 8:15 p.m., while conducting rounds in the segregation unit where plaintiff was placed subsequent to the use-of-force incident, plaintiff was seen by named defendant Nurse Moore. Defendant Moore noted plaintiff's involvement in a physical use-of-force incident, and exposure to pepper spray. Nurse Moore noted plaintiff's complaint that his eyes were burning. Nurse Moore noted use-of-force protocol. Nurse Moore noted no marks on plaintiff's trunk, limbs or head, and further noted plaintiff to be oriented and hostile and angry. Nurse Moore's records reflect that she educated plaintiff on sick

8

call and medication pass procedure in the segregation unit. Nurse Moore's records reflect that plaintiff had been placed in dry cell per custody for ingestion of unknown substance.

On June 29, 2004, plaintiff complained of his eyes burning and hurting. In response, nondefendant Nurse Grizzle washed out his eyes and plaintiff stated his eyes had stopped burning. Nurse Grizzle noted scabs on plaintiff's eyelids. On July 2, 2004, plaintiff was again examined by Nurse Grizzle and made no complaints related to the after-effects of pepper spray. On July 4, 2006, plaintiff was again examined by Nurse Grizzle, at which time he requested a shower, stating he felt dirty, but made no complaints related to the after-effects of pepper spray. Medical Records reflect that nondefendant Sgt. Green spoke with plaintiff on this date and would check on giving him a shower on a nonscheduled shower day.

Despite plaintiff's medical records, plaintiff states he was first seen by medical personnel at the time he was seen by defendant Nurse Moore. Plaintiff states he was not seen by Nurse Dorman or Phillips. Plaintiff states that Nurse Moore denied him medical care in response to his complaints regarding the after-effects of pepper spray. Plaintiff further states that Nurse Dorman's medical records fail to indicate that his eyes and mucous membranes were flushed with water, but rather that flushing plaintiff's eyes and mucous membranes was merely a plan of treatment that was, in fact, not conducted.

*Deliberate Indifference to Serious Medical Condition*

The standard for determining deliberate indifference to a serious medical need is set forth in a previous section of this Report and Recommendation, and is not restated here.

For purposes of summary judgment, this court will assume that being sprayed with pepper spray provides for a potential serious medical condition if not treated with copious amounts of water. However, the court finds that plaintiff has failed to come forward with evidence to support his claim that Nurse Moore, with deliberate indifference, failed and/or refused to provide him with medical care to treat the after-effects of pepper spray.

The medical records and declaration of Nurse Moore reflect, at most, possible negligence with regard to Moore's assessment and reliance on the treatment plan which appeared to indicate that plaintiff's eyes had been previously flushed with water. However, a negligent diagnosis or treatment of a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. See Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) (even if

9

inadequacy in medical care amounted to negligence in state-law tort case claiming medical malpractice, more must be shown to establish a constitutional violation); Dulay v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (mere negligence or medical malpractice is insufficient to rise to a constitutional violation). Plaintiff provides no evidence of behavior to support a finding of subjective deliberate indifference by Nurse Moore. Plaintiff provides no evidence that Nurse Moore was aware of the actual risk of harm to plaintiff, and that, with deliberate inaction, she disregarded such risk of harm. See Bryan v. Endell, 141 F.3d at 1291 (delay in treatment of prisoner's broken hand caused surgery to be impractical; however, no constitutional violation because defendants did not possess the necessary subjective mental state). Further, the declaration of Dr. Conley provides that upon her review of the medical records, she does not believe that Nurse Moore treated plaintiff with deliberate indifference. "In the face of medical records indicating that treatment was provided and physician affidavits indicating the care provided was adequate, an inmate cannot create a question of fact by merely stating he did not feel he received adequate treatment." Dulay v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997). Plaintiff provides no evidence beyond his own statements that Nurse Moore was deliberately indifferent to his suffering from the after-effects of pepper spray.

Further, plaintiff does not dispute the medical records which provide that on June 29, 2004, plaintiff's eyes were flushed and he stated the burning in his eyes was gone. Thus, even assuming plaintiff was denied an opportunity to flush his eyes and membranes immediately following his exposure to pepper spray, there is no dispute that he, in fact, received treatment for the after-effects of the pepper spray. Without verifying medical evidence indicating such a delay in treatment caused a detrimental effect, plaintiff cannot succeed on claims of delay in medical treatment in violation of the Eighth Amendment. Plaintiff has failed to provide such medical evidence; therefore, his claims regarding delay in medical treatment fail to present a dispute of a material fact.

Based upon the undisputed material facts, no reasonable jury could find that defendant Nurse Moore, with deliberate indifference, neglected plaintiff's serious medical needs. Nurse Moore is entitled to judgment as a matter of law.

## Conclusion

Plaintiff has failed to come forward with evidence, beyond his mere assertions, to support his claims that defendant Friezen used excessive force against him, and that both defendants Friezen and Moore, with deliberate indifference, refused to provide medical care to plaintiff to counter the after-effects of pepper spray. Based upon the undisputed material facts, no reasonable jury could conclude that the use of force against plaintiff, and the alleged delay in receiving medical care, constituted cruel and unusual punishment, in violation of the Eighth Amendment.

## John Doe Correction Officer

A review of the record indicates defendant John Doe Correction Officer has not been identified or served with process. Fed. R. Civ. P. 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Plaintiff was granted leave to proceed in forma pauperis on February 21, 2006. Here, it has been more than 120 days since plaintiff's complaint was filed naming John Doe Correction Officer as a defendant. Plaintiff has neither identified such defendant nor provided an address for service of process.

On September 22, 2006, plaintiff filed motions for appointment of counsel and for transfer to another correctional facility, citing his limited access to the law library while assigned to administrative segregation. Based on the foregoing, it is

ORDERED that plaintiff's motions for appointment of counsel and for transfer are denied, without prejudice [51]. It is further

RECOMMENDED that plaintiff's claims against defendant John Doe Correction Officer be dismissed, pursuant to Fed. R. Civ. P. 4(m). It is further

RECOMMENDED that the motions of defendants Friezen and Moore for summary judgment be granted and plaintiff's claims be dismissed [21, 31].

11

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal. See L.R. 74.1(a)(2).

Dated this 30th day of January, 2007, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge